# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NOS. 04-278 |
| | | 04-552 |
| DEMETRIUS JERMAINE ANDERSON | : | |

## UNITED STATES' MEMORANDUM
## CONCERNING FINANCIAL PENALTIES

The United States files this memorandum concerning the financial penalties portion of the defendant's sentence as directed by this Court's order of April 3, 2019. In that order the Court asked the parties to submit legal memoranda concerning defendant Demetrius Anderson's present obligation to pay the financial penalties, and how the obligations would be structured and enforced. The government urges the Court to find that the restitution obligation of $4,140 that was part of the sentence it imposed in 2005 remains in force. The government further submits that if Anderson fails to honor the payment agreement he has submitted, the government can collect this restitution through the civil means it has available, just as such obligations are enforced with defendants whose restitution is not fully paid when they complete their supervised release and who fail to make payments. The government also submits that the special assessment imposed ($400) is no longer enforceable, as this obligation is only collectable for five years, which has already passed.

## I. BACKGROUND

### A. Original Sentence and State Custody

Anderson's case present a rarely occurring situation where state authorities did not turn Anderson over to the U.S. Marshal upon the completion of his state sentence, pursuant to a federal detainer that was in place, but rather released him from custody. That occurred in November 2006, but the Marshals did not discover it until late 2018 or early 2019. At the Marshal's request, this Court issued a warrant for Anderson's arrest. The Marshals then located Anderson in Connecticut where he was living and took him into custody. A Magistrate Judge in Connecticut released Anderson on an unsecured bond on March 20, 2019. This Court issued its order for further briefing on April 3, 2019.

On January 18, 2005, Anderson pleaded guilty to charges relating to passing and possessing counterfeit currency (CR 04-278) and to charges relating to identity theft related to the purchase of automobiles (CR 04-552).

On May 4, 2005, this Court sentenced Anderson to serve 16 months imprisonment, three years of supervised release, a special assessment of $400, and ordered restitution of $4,140 ($160 to Strawbridge's and $3,980 to Ikea). The restitution related to the counterfeit currency charges in CR 04-278. Because Anderson was here on a writ to the authorities in Connecticut, he was returned to Connecticut following this sentencing hearing. The Marshals placed a federal detainer for Anderson with Connecticut authorities, and Connecticut confirmed it had the detainer. Anderson was technically in Connecticut custody when being held by the Marshal when Anderson was here on a writ, and when the Marshal

returned him to Connecticut Anderson had not served nor gotten credit for any of his 16-month federal sentence.

Anderson then pleaded guilty in Connecticut to forgery and failure to appear charges. On June 28, 2005, the state judge in Connecticut sentenced Anderson to three years imprisonment on each count, with the sentences on the counts to run concurrently with each other. Connecticut authorities then imprisoned Anderson in Connecticut to serve this sentence.

On November 2, 2006, Anderson completed his state sentence. Notwithstanding the federal detainer, Connecticut released Anderson from custody without notifying the Marshals. Anderson remained out of custody until the Marshals arrested Anderson on March 20, 2019 on this Court's recent warrant.

B. Sentence Calculation

After the Marshals found and arrested Anderson in Connecticut, they notified the U.S. Bureau of Prisons (BOP) that Anderson was ready to serve his federal sentence, and asked BOP to compute that sentence and designate the location where the sentence would be served. BOP examined the unusual facts of this case and looked at the reason for the extended time out of custody between Anderson's release in November 2006 and his arrest on March 20, 2019. The BOP, relying on *Vega v. United States*, 493 F.3d 310 (3d Cir. 2007), determined that Anderson should receive "credit for the time he was at liberty" following his erroneous release on November 2, 2006. BOP determined that the application of this credit resulted in a federal BOP release date of December 30, 2007. BOP has thus determined that Anderson's federal custody sentence has been satisfied.

The BOP did not address the other parts of Anderson's sentence because only the custody portion was a matter under BOP's authority.  This Court's sentence also included three years of supervised release, a $400 special assessment, and restitution of $4,140.  At this Court's request, this memorandum addresses the financial aspects of this sentence.  The parties, in a joint motion filed on April 2, 2019, recommended that the Court find that Anderson's supervised release sentence was satisfied during his time at liberty following his federal release date of December 30, 2007, because Anderson did not incur any arrests or convictions, is employed, does not appear to be in need of current Probation Office supervision, and was not given the opportunity to serve his supervised release term immediately following his release from custody.  *Cf. Johnson v. Mathieson*, 2015 WL 3772776 (E.D. Va. June 16, 2015) (supervised release term dismissed under similar facts, but without discussion);  *But see U.S. v. Grant*, 862 F.3d 417 (4th Cir. 2017)(declining to follow *Vega* in the Fourth Circuit and collecting cases).

## II. DISPOSITION OF FINANCIAL PENALTIES

### A. Special Assessment

The special assessment of $400 is no longer collectable.  Section 3013 of Title 18 addresses special assessments.  Section 3013(c) states:

> (c) The obligation to pay an assessment ceases five years after the date of the judgment.  This subsection shall apply to all assessments irrespective of the date of imposition.

18 U.S.C. §3013(c).

Because more than five years have passed since this Court imposed this sentence, Anderson no longer has an obligation to pay this $400 special assessment.  The fact that he was

improperly released should not change this conclusion. There is no exception in this statute for tolling the five year limit. The government submits that it would not be appropriate here to apply a theory similar to the fugitive disentitlement doctrine,[1] or the tolling of statutes of limitations for a fugitive,[2] because Anderson was out of custody due to the actions of governmental authorities, not by his own improper doing (as would be the case if he had escaped and were a fugitive at large for the period he was at liberty). The government realizes that Anderson did not, on his own, take steps to begin payments on his financial obligations, which he would have had no reason to believe were extinguished. However, in a case where restitution is owed and no payments are made, the government usually will initiate contact and/or begin collection proceedings, which it did not do here.[3] Anderson's failure to unilaterally initiate payment appears to be insufficient to provide a basis for tolling the operation of §3013(c), which itself has no provision for tolling. Thus, there is no basis for tolling the five year limitation, and Anderson no longer owes the $400 special assessment.

B. Restitution

This Court also ordered Anderson to pay $4,140 in restitution to two retail businesses ($160 to Strawbridge's and $3,980 to Ikea). This was in connection with Anderson passing counterfeit currency and changing out real currency for counterfeit currency.

---

1 The Supreme Court has held that the fugitive disentitlement doctrine justifies the dismissal of appeals when the defendant is a fugitive. *Degen v. United States*, 517 U.S. 820, 824 (1996) ("In accord with these principles, we have held federal courts do have authority to dismiss an appeal or writ of certiorari if the party seeking relief is a fugitive while the matter is pending.")

2 "No statute of limitations shall extend to any person fleeing from justice." 18 U.S.C. §3290.

3 The Third Circuit has noted that "a defendant . . . has no affirmative duty to aid in the execution of his sentence." *Vega,* 493 F.3d at 319, *quoting Barker v. Wingo,* 407 U.S. 514, 527 (1972).

This obligation to pay restitution is still active and enforceable. Restitution obligations are enforceable for twenty years from the date of the defendant's release from prison.[4] This Court imposed the restitution in May of 2005, and Anderson was released from imprisonment in November of 2006. Thus, the restitution obligation will continue to be enforceable until 20 years after Anderson's release from imprisonment, that is, until November of 2026.

This obligation should not be affected by the fact that Anderson was released by Connecticut without those authorities notifying the Marshal. The theory that supported his receiving credit for time at liberty with respect to his custody sentence does not similarly apply to his restitution obligation. As explained in *Vega,* the decision to grant a defendant credit against his sentence of imprisonment for time at liberty under these facts is based on a common law notion that a prisoner "cannot be required to serve [his sentence] in installments." *Vega,* 493 F.3d at 318, *quoting White v. Pearlman,* 42 F.2d 788, 789 (10th Cir. 1930). Thus, requiring Anderson to serve 16 months imprisonment after a gap of liberty of more than 12 years, when the government failed to notice the error of Connecticut failing to honor its detainer, would infringe on this common law right. However, requiring Anderson to pay the restitution after 12 years at liberty is not the same as imprisonment by installments.

First, monetary penalties are often paid over time, usually on a payment schedule initially ordered by the sentencing court. Although small payments are usually paid while the defendant is incarcerated, unless the total to be paid is small, defendants often continue payments

---

[4] "The liability to pay restitution shall terminate on the date that is the later of 20 years from the entry of judgment or 20 years after release from imprisonment of the person ordered to pay restitution." 18 U.S.C. §3613(b).

after release.  These, then, are necessarily payments by installments, and it is a usual course of payment.  Second, if a defendant fails to pay as ordered, the government will undertake collection efforts.  This usually takes time to initiate, and there may often be gaps in payments without prejudice to the defendant.  Third, here, Anderson benefits by not having to make payments for a period of time.  There is no interest charge on the restitution owed, and the delay in payment is to his benefit.  Finally, there is no inequity in insisting that Anderson repay the money he stole from the retail businesses through the use of counterfeit currency.  There is no equitable reason that he should be able to keep the bounty of his crime just because his debt is 12 years old.  The debt is still legally enforceable, and the victims are still out the funds.  Thus, unlike the burden of serving prison time "by installments," there is no actual prejudice to requiring Anderson to repay the money he stole even 12 years after he was released from prison.  The theory of prejudice underlying the credit for time at liberty against his sentence of incarceration does not therefore extend to the delayed repayment of a justly owed and legally collectable monetary debt.  The restitution obligation is therefore still enforceable and collectable.

In addition, there is a difference between the treatment of the imprisonment and supervised release portion of the sentence and the restitution.  The imprisonment and supervised release are deemed satisfied by the passage of time on release (imprisonment by the BOP's calculation, and the government and the defendant urge the Court to find the supervised release portion satisfied).  The payment of restitution is not satisfied because Anderson has not made any payments toward restitution.  The passage of time, within the 20 year limit, does not affect the legal collectability of the restitution.

7

Anderson's obligation to repay his $4,140 in restitution is structured through his agreement to pay.  Anderson has agreed, in writing, to pay this restitution in monthly installments of $250 until the debt is paid.  At this rate, the restitution will be paid in about 17 months.  This obligation will be enforced, initially, by the government's monitoring of Anderson's payments to the Clerk of Court of these monthly installments.

If Anderson fails to pay the restitution in this manner, the government will enforce the judgment of restitution "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal or State Law."  18 U.S.C. §§3613(a), 3664(m)(1)(A)(i).  The United States Attorney's office routinely uses the civil enforcement tools at its disposal to obtain payment of restitution, fines, and special assessments.  This may arise when a defendant has completed supervised release, and thus is not subject to a violation of supervised release hearing, but still owes a balance on his financial obligation.  In that case, the government will take action to collect the amount owed.  It would enforce Anderson's obligation here in the same way.

For the above reasons, the government urges this Court to find that the special assessment is no longer collectable, and that the restitution obligation is still in effect.

Respectfully yours,

WILLIAM M. MCSWAIN
United States Attorney


  _s/ Albert S. Glenn_
ALBERT S. GLENN
Assistant United States Attorney

Dated: April 12, 2019

# CERTIFICATE OF SERVICE

I certify that I caused a copy of

**UNITED STATES' MEMORANDUM
CONCERNING FINANCIAL PENALTIES**

to be served on the below date by mail on the following:

Rossman D. Thompson, Jr.
Assistant Federal Defender
Defender Association of Philadelphia, Federal Court Division
The Curtis Center   Building
601 Walnut Street, Suite 540 West
Philadelphia, PA 19106

                                            *s/ Albert S. Glenn*
                                            ALBERT S. GLENN
                                            Assistant United States Attorney

Dated:     April 12, 2019